IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IVS GROUP, INC.,

        Plaintiff,

v.                                                                 CIVIL ACTION NO. 2:18-cv-01456

NATURAL BLEND VEGETABLE
DEHYDRATION, LLC,

        Defendants.

MEMORANDUM OPINION AND ORDER

I.     Introduction

Pending before the court is the plaintiff's Motion to Remand [ECF No. 6]. For the reasons that follow, the Motion is **GRANTED**, and the court **REMANDS** this case to the Circuit Court of Kanawha County, West Virginia.

II.     Background

In May 2015, Industrial SiloSource, Inc. ("ISS")—a subsidiary of Plaintiff IVS Group, Inc. ("IVS")—entered into an agreement with the defendant, Natural Blend Vegetable Dehydration, LLC ("Natural Blend"), to perform work at the defendant's facility in North Carolina. ISS performed some work for the defendant but did not finish the project due to the alleged presence of toxic gases at the defendant's facility. IVS avers that ISS received only partial payment for the submitted invoices and was owed $52,277.89 for work performed pursuant to its contract with the defendant.

In August 2017, ISS assigned the aforesaid contract to IVS, its parent company, for collection. IVS then sued the defendant in the Circuit Court of Kanawha County, West Virginia on October 31, 2017. The parties subsequently engaged in settlement negotiations. The plaintiff claims that the parties agreed to a lump-sum payment of $35,000 to settle the action and that the defendant sent the plaintiff a check for that amount on December 14, 2017.

Following receipt of the $35,000, the plaintiff executed and sent to the defendant a Settlement Agreement and Mutual Release. On January 16, 2018, Stephen L. Beaman, counsel for the defendant, returned the executed release with edits. IVS group purportedly revised the release so that it was consistent with Mr. Beaman's edits and executed it on January 17, 2018. Keith May, President and CEO of IVS, sent the revised release to Mr. Beaman on that same date. The First Amended Complaint states that Mr. Beaman returned the revised release on March 12, 2018 with additional edits that allegedly had never been approved by IVS.

On April 4, 2018, the plaintiff filed its First Amended Complaint, which contains one count: The plaintiff seeks a declaratory judgment "declaring the respective rights of IVS Group, ISS and Natural Blend pursuant to the January 17, 2018 release . . . ." Am. Compl. ¶ 28. The plaintiff specifically requests that the court declare as follows:

> a. That Stephen L. Beaman, Esquire was authorized to negotiate a settlement on behalf of Natural Blend;

      b. That the parties had a meeting of the minds on the terms of a settlement of all claims existing between them, as set forth in the January 17, 2018 release; and

      c. That pursuant to the January 17, 2018 [sic], IVS Group and ISS on the one part and Natural Blend on the other part agreed to mutually release and forever discharge the other from any and all liability, on account of any of the claims alleged in this Civil Action or otherwise related to the work performed by ISS at the Natural Blend facility in the State of North Carolina.

*Id.*

Notably, one of the defendant's silo facilities, which ISS was servicing, caught fire on November 27, 2015, shortly after ISS ceased its work at the facility. The consequential property damage, which has purportedly been valued at more than $3.2 million, is now the subject of litigation in the U.S. District Court for the Eastern District of North Carolina (the "North Carolina action"). Natural Blend, the defendant in this action, filed a third-party complaint against ISS in the North Carolina action in March 2018.

On November 2, 2018, the Circuit Court of Kanawha County ordered the parties in this case to mediation. In furtherance of the court's mandate, on November 8, 2018, counsel for both parties exchanged emails. The defendant removed the matter to this court on November 19, 2018, more than one year after the commencement of the action, based on the content of the November 8, 2018 emails. The defendant claims that the November 8, 2018 emails were a settlement negotiation and contained information that established that the scope of the release

at issue in this matter encompassed the resolution of the North Carolina action, which satisfies the jurisdictional requirements for diversity jurisdiction under 28 U.S.C. § 1332.

### III. Legal Standard

Article III of the United States Constitution provides, in pertinent part, that "[t]he judicial Power shall extend . . . to Controversies . . . between Citizens of different States." U.S. Const. art. III, § 2. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

Congress provided a right to remove a case from state to federal court under 28 U.S.C. § 1441. This statute states, in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Because removal of civil cases from state to federal court infringes state sovereignty, federal courts strictly construe the removal statute and resolve all doubts in favor of remanding cases to state court. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *see also Mulcahey v. Columbia Organic*

*Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction.").

Under the removal statute, a defendant must file a notice of removal within thirty days of receiving service of the initial pleading or summons, or within thirty days after receipt "of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). Nevertheless, when removal is based on diversity jurisdiction, a defendant only has one year after the action's commencement to initiate removal "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).[1] The statute further provides that "if the district court finds, by a preponderance of the evidence, that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, then removal is proper, effectively determining that such conduct was in bad faith." C. Wright, et al., 14C Fed. Prac. & Proc. Juris. § 3731 (4th ed.). The party asserting federal jurisdiction bears the burden of proof. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73 (1996); *Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 935 (S.D. W. Va. 1996); *see also Monk v. Werhane Enters., Ltd.*, No. 06-4230, 2006 WL 3918395, at *5 (E.D. La. Nov. 27, 2006) (noting that "[t]he equitable exception [to the one-year limitation on removal] does not alter this burden").

---

[1] "[T]he one-year limitation does not reset based on amendments made to the original complaint." *Johnson v. HCR Manorcare LLC*, No. 1:15CV189, 2015 WL 6511301, at *4 (N.D. W. Va. Oct. 28, 2015) (citing *Belcher v. Flagstaff Bank, F.S.B.*, No. 2:12–cv–01211, 2012 WL 6195541, at *2 (S.D. W. Va. Dec. 12, 2012)).

IV. **Discussion**

The defendant does not dispute that the action was removed after the one-year removal deadline. Instead, the defendant relies on the exception set forth in 28 U.S.C. § 1446, which permits removal after one year of the commencement of the action when the plaintiff deliberately fails to disclose the actual amount in controversy to prevent removal. The court finds that in this respect the defendant has failed to meet its burden of proof.

The defendant claims that the plaintiff deliberately failed to disclose the true object of the litigation until eight days after the one-year removal deadline. The defendant bases this assertion on an email communication with the plaintiff's counsel on November 8, 2018. The defendant's email stated as follows:

> Thank you for your message. I am checking with the client now about possible availability for mediation on those dates.
>
> In the interim, and in order to have any possibility of productive settlement discussions, we need clarity on an important issue. Your client's complaint implies that this case is about a release over a $50,000 invoice. But, your response to my client's motion to dismiss and your statements at the recent hearing lead me to suspect that your client may take a different view of the scope of the release.
>
> As I explained to the Court, my client was under the belief that any release only applied to the $52,277.89 disputed invoice cited in the Am. Compl. at paragraph 8. However, based on discussions at the hearing, it appears that your client believes that the settlement agreement should also release my client's claims for any liability towards $3.2

> million in the case pending in the Eastern District of North Carolina.
>
> Please confirm whether the lawsuit is about an alleged deal to settle the $52,000 invoice or if your client is asserting that the $3.2 [sic] claim was also settled? Again, without knowing this my client can't possibly be prepared to properly negotiate.

[ECF No. 1-2] 1. Counsel for the plaintiff responded that

> [t]he First Amended Complaint is seeking a declaratory judgment from the Court that the January 17, 2018 Settlement Agreement and Release reflects the terms of the settlement between IVS Group and Natural Blend, and pursuant to the January 17, 2018 agreement, IVS Group/ISS and Natural Blend agreed to mutually release and forever discharge the other from any and all liability, on account of any of the claims alleged in this Civil Action or otherwise related to the work performed by ISS at the Natural Blend facility in the State of North Carolina.

*Id.* The defendant claims that this communication "finally makes it clear that they believe the $3.2 [sic] claim was settled." Def.'s Resp. [ECF No. 11] 5.

Despite the defendant's contentions, the email correspondence and chronology of events do not prove by a preponderance of the evidence that the plaintiff *deliberately* failed to disclose the actual amount in controversy to prevent removal. First, the plaintiff's November 8, 2018 email discloses no new information. To the contrary, it merely restates the language in Count I of its First Amended Complaint filed seven months prior, which states, in pertinent part:

> That pursuant to the January 17, 2018 [sic], IVS Group and ISS on the one part and Natural Blend on the other part agreed to mutually release and forever discharge the other from any and all liability, on account of any of the

7

> claims alleged in this Civil Action or otherwise related to the work performed by ISS at the Natural Blend facility in the State of North Carolina.

Am. Compl. ¶ 28. Thus, the plaintiff's email demonstrates that its claim has been clear since the filing of the First Amended Complaint: The plaintiff seeks a declaration that the January 17, 2018 settlement agreement governs the resolution of claims between ISS and the defendant. Though the defendant contends that the plaintiff should have denied that the case involved the $3.2 million claim, the plaintiff's failure to do so does not prove by a preponderance of the evidence that the plaintiff deliberately failed to disclose the amount in controversy for the purpose of preventing removal. It is more likely that the plaintiff sought to state, in plain terms, exactly what is contested in the First Amended Complaint. Nor does the fact that the plaintiff's First Amended Complaint references only the $52,277.89 purchase order demonstrate that the plaintiff deliberately failed to disclose the amount in controversy to prevent removal.

Moreover, even if the plaintiff's restatement of Count I of its First Amended Complaint was in some way the first time the plaintiff disclosed the true object of the litigation, district courts have found that "a plaintiff's failure to quantify damages until after the one-year mark does not," by itself, "warrant an exception to the one-year bar on removal." *Woods v. Nationstar Mortg. LLC*, No. 2:18-cv-00568, 2018 WL 3420813, at *3 (S.D. W. Va. July 13, 2018). Without more, the court finds that the defendant has not met its burden of showing that the plaintiff deliberately failed to

disclose the actual amount in controversy to prevent removal or otherwise acted in bad faith. Therefore, the exception to the one-year removal requirement does not apply, and the defendant's removal was untimely. Consequently, the court **REMANDS** this action to state court.

The plaintiff's Motion also requests fees and costs incurred as a result of the defendant's improper removal. Pursuant to 28 U.S.C. § 1447(c), the Court may upon remanding the case order the defendant to pay the plaintiff's costs and expenses, including attorney's fees, incurred as a result of the removal. Here, the defendant removed the case after the one-year removal deadline based on an email communication from the plaintiff's counsel that merely restated Count I of the First Amended Complaint. The court finds the defendant "lacked an objectively reasonable basis for seeking removal." *In re Crescent City Estates, LLC*, 588 F.3d 822, 829–31 (4th Cir. 2009) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). Thus, the court **GRANTS** the plaintiff's request for attorneys' fees and costs.

V. Conclusion

The plaintiff's Motion to Remand [ECF No. 6] is **GRANTED**, and the court **REMANDS** this case to the Circuit Court of Kanawha County, West Virginia. The court also **GRANTS** the plaintiff's request for attorneys' fees and costs. The court **DIRECTS** the plaintiff to submit for review an accounting of attorneys' fees and costs.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

9

ENTER: January 18, 2019

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE